## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TERESA WILSON, RYAN SANDERS, SUSAN CANADA, TABATHA SIDI, TIFFANIE SKIBICKI, HEATHER AGE, JOLINA MANLEY, JESSICA DAVID, and CASSANDRA MARTELL, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>BEECH-NUT NUTRITION COMPANY; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.:  1:21-CV-0334 (TJM/CFH)<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Teresa Wilson, Ryan Sanders, Susan Canada, Tabatha Sidi, Tiffanie Skibicki, Heather Age, Jolina Manley, Jessica David, and Cassandra Martell ("Plaintiffs"), on behalf of themselves and the Class and Subclasses of all others similarly situated, bring this class action against Defendant Beech-Nut Nutrition Company ("Beech-Nut or "Defendant"), based on Defendant's misleading, deceptive and unfair business practices with respect to the marketing, advertising, labeling, packaging and sale of its baby food products, which contain levels of toxic heavy metals.

## NATURE OF ACTION

1.      This case involves a straightforward and systematic course of false, misleading, and unlawful conduct: Defendant has misrepresented and falsely advertised that the baby food products it sells are natural, organic, and free from artificial preservatives.[1]

2.      Parents and other caregivers, including Plaintiffs and members of the Class and Subclasses, reasonably believe that the baby food they purchase will be healthy, nutritious, and

---

[1] *Beech-Nut, Our Story*, https://www.beechnut.com/our-story/

free from harmful substances and contaminants. However, on February 4, 2021, The United States House of Representatives Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("Subcommittee") published a report ("Subcommittee Report"), revealing its findings that numerous baby foods, including those manufactured by Defendant Beech-Nut, are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[2]

3.      Given the health risks associated with the consumption of high levels of toxic heavy metals, the presence of these substances is material to consumers.

4.      Defendant Beech-Nut knew that the presence of toxic heavy metals in its baby food products was material to consumers, which is evidenced by its representations that its baby food products are tested for such substances. Yet Defendant Beech-Nut chose to omit and conceal that its baby food products contained, or were at risk of containing, levels of heavy toxic metals, and therefore deceptively misled Plaintiffs and members of the Classes that purchased these products in reliance on Beech-Nut's representations.

5.      Plaintiffs seek relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendant's falsely and deceptively labeled baby food products during the statute of limitations period, for breach of express and implied warranty, fraud by omission, intentional and negligent misrepresentation, quasi contract, unjust enrichment, and restitution, and for violations of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*, Minnesota Prevention of Consumer Fraud Act, M.S.A.

---

[2] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report, Staff of H. Subcomm. On Econ. And Consumer Policy, Comm. On Oversight and Reform, 117th Cong., https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf   (Feb. 4, 2021) ("Subcommittee Report").

§ 325F.68 *et seq.*, Minnesota False Statement in Advertising Act, M.S.A. § 325F.67, and North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.,* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, and New York False Advertising Act, N.Y. Gen. Bus. Law § 350.

### THE PARTIES

6.      Plaintiff Teresa Wilson ("Plaintiff Wilson") is a citizen of the State of Indiana and is a member of the Nationwide Class and the Indiana Subclass. Plaintiff Wilson purchased Beech-Nut's Stage Two (6+ months) mixed fruit baby food jars.

7.      Plaintiff Ryan Sanders ("Plaintiff Sanders") is a citizen of the State of Oklahoma and is a member of the Nationwide Class and the Oklahoma Subclass. Plaintiff Sanders purchased a wide range of products from Beech-Nut, including but not limited to, various flavors of Fruit Pouches, Rice Cereal, and baby food jars.

8.      Plaintiff Susan Canada ("Plaintiff Canada") is a citizen of the State of North Carolina and is a member of the Nationwide Class and the North Carolina Subclass. Plaintiff Canada purchased various flavors of fruits and vegetables from Beech-Nut's "Naturals" line, 4+month jars.

9.      Plaintiff Tabatha Sidi ("Plaintiff Sidi") is a citizen of the State of Utah and is a member of the Nationwide Class and the Utah Subclass. Plaintiff Sidi purchased various Beech-Nut products at all stages (4+ Months, 6+ Months, 8+ Months, and 12+ Months).

10.     Plaintiff Tiffanie Skibicki ("Plaintiff Skibicki") is a citizen of the State of Minnesota and is a member of the Nationwide Class and the Minnesota Subclass. Plaintiff Skibicki purchased multiple flavors of Beech-Nut's baby food jars.

11.     Plaintiff Heather Age ("Plaintiff Age") is a citizen of the State of Kentucky and is a member of the Nationwide Class and the Kentucky Subclass. Plaintiff Age purchased varieties of Beech-Nut's jarred baby food, including Apples, Pears, Sweet Potatoes, and Peas.

12.     Plaintiff Jolina Manley ("Plaintiff Manley") is a citizen of the State of Nebraska and is a member of the Nationwide Class and the Nebraska Subclass. Plaintiff Manley purchased all varieties of Beech-Nut's varieties of Fruits, Vegetables, and Meats.

13.     Plaintiff Jessica David ("Plaintiff David") is a citizen of the State of Florida and is a member of the Nationwide Class and the Florida Subclass. Plaintiff David purchased Beech-Nut's Chicken & Chicken Broth, and multiple flavors of Beech-Nut's Stage 2 (6+ months) baby food jars, including Mixed Veggies, Carrots, Banana Orange Pineapple, Carrot Zucchini Pear Banana Strawberry, Pear Raspberry, and different varieties of the Veggie Pouches.

14.     Plaintiff Cassandra Martell ("Plaintiff Martell") is a citizen of the State of New York and is a member of the Nationwide Class and the New York Subclass. Plaintiff Martell purchased a wide range of Beech-Nut's products, including various flavors of Beech-Nut pouches and Beech-Nut Rice Cereal.

15.     Plaintiffs believed they were feeding their children healthy, nutritious foods during the time they purchased and fed their children Defendant Beech-Nut's baby food products. Due to the false and misleading claims and omissions by Defendant Beech-Nut as described herein, Plaintiffs were unaware that the baby food products sold by Defendant Beech-Nut contained any level of toxic heavy metals, and Plaintiffs would not have purchased the products if that information had been fully disclosed.

16.     Defendant Beech-Nut is a citizen of Delaware, where it is incorporated and maintains its principal place of business at One Nutritious Place, Amsterdam, New York.

Defendant Beech-Nut does business throughout the United States, and sells baby food products online and at brick-and-mortar retail stores.

## JURISDICTION AND VENUE

17.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs (defined below) are citizens of states different from Beech-Nut. Further, greater than two-thirds of the Class members reside in states other than the state in which Beech-Nut is a citizen.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) in that Defendant is a corporation that maintains its principal place of business in this jurisdiction. Further, Defendant (a) is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district; (b) does substantial business in this district; and (c) is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### A.    Defendant Falsely Marketed and Advertised its Baby Food Products

19.     Defendant Beech-Nut manufactures, markets, advertises, labels, represents, warrants, distributes, and sells baby food products throughout the United States under the Beech-Nut label. Beech-Nut makes various representations about its Products, including that they are "organic" and "real food for babies."

20.     Beech-Nut claims on its website that its Products contain "food quality standards you can trust."[3] Beech-Nut's stated purpose is "we champion real food for a healthier world,"

---

[3] *Beech-Nut*, https://www.beechnut.com/

and further promises that it offers natural and organic products that are free from artificial preservatives, colors and flavors, and that it conducts "over 20 rigorous tests on its purees for up to 255 pesticides and heavy metals (like lead, cadmium, arsenic and other nasty stuff)."[4]

21.    The products at issue are various types of Beech-Nut's baby food products that contain heavy metals, including but not limited to the Beech-Nut products purchased by Plaintiffs ("Products")[5], specifically:

a.    Beech-Nut Stage 1 (4+ months) Chicken & Chicken Broth Jar
b.    Beech-Nut Stage 1 (4+ months) Turkey & Turkey Broth Jar
c.    Beech-Nut Stage 1 (4+ months) Oatmeal Cereal Canister
d.    Beech-Nut Stage 1 (4+ months) Rice Cereal Canister
e.    Beech-Nut "Naturals" Stage 1 (4+ months) Banana Jar
f.    Beech-Nut "Naturals" Stage 1 (4+ months) Butternut Squash Jar
g.    Beech-Nut "Naturals" Stage 1 (4+ months) Pear Jar
h.    Beech-Nut "Naturals" Stage 1 (4+ months) Sweet Potato Jar
i.    Beech-Nut "Organics" Stage 1 (4+ months) Apple Jar
j.    Beech-Nut "Organics" Stage 1 (4+ months) Carrots Jar
k.    Beech-Nut "Organics" Stage 1 (4+ months) Sweet Potato Jar
l.    Beech-Nut "Organics" Stage 1 (4+ months) Pumpkin Jar
m.    Beech-Nut Stage 2 (6+ months) Beet, Pear & Pomegranate Jar
n.    Beech-Nut Stage 2 (6+ Months) Banana & Strawberries Jar
o.    Beech-Nut Stage 2 (6+ Months) Pear & Raspberries Jar
p.    Beech-Nut Stage 2 (6+ months) Carrot, Zucchini & Pear Veggies Pouch
q.    Beech-Nut Stage 2 (6+ months) Pumpkin, Zucchini & Apple Veggies Pouch
r.    Beech-Nut Stage 2 (6+ months) Squash, Peas & Pears Veggies Pouch
s.    Beech-Nut Stage 2 (6+ months) Zucchini, Spinach & Banana Veggies Pouch
t.    Beech-Nut Stage 2 (6+ months) Mixed Vegetables Jar
u.    Beech-Nut Stage 2 (6+ months) Sweet Carrots Jar
v.    Beech-Nut Stage 2 (6+ months) Sweet Peas Jar
w.    Beech-Nut Stage 2 (6+ months) Sweet Potato Jar
x.    Beech-Nut Naturals Stage 2 (6+ Months) Banana, Orange & Pineapple Jar
y.    Beech-Nut Stage 4 (12+ month) Yogurt, Banana & Mixed Berry Breakfast Pouch
z.    Beech-Nut Stage 4 (12+ Months) Yogurt, Banana & Strawberry Breakfast Pouch

---

[4] *Beech-Nut, Our Story*, https://www.beechnut.com/our-story/
[5] Plaintiffs reserve the right to amend this definition upon completion of discovery.

22.    Beech-Nut uses words such as "organic" and ages such as "4+ Months", "6+ Months", "8+ Months" and "12+ Months" to emphasize the foods suitability for consumption by infants and young children.

23.    Beech-Nut's labels and packaging do not disclose that the Products contain, or may contain, levels of toxic heavy metals.

**B.**    **Defendant's Marketing and Advertising Misled and Deceived Consumers**

24.    Parent consumers are drawn to representations such as the ones claimed on Beech-Nut's website because parents pay attention to what ingredients are in the baby food they purchase for their child. Parents are cautious and vigilant because they do not want to expose their children to potentially harmful substances or chemicals, such as heavy metals like arsenic, lead, mercury, and cadmium.

25.    Beech-Nut's marketing of its Products wrongfully conveys to consumers that the Products have certain superior quality and characteristics that they do not actually possess. For example, Beech-Nut's misrepresentations caused Plaintiffs and other consumers to believe that its Products do not contain high levels of toxic heavy metals through its marketing and omissions, which is material information to a reasonable consumer.

26.    In light of Beech-Nut's marketing, including its commitment to providing natural and organic products that are free from artificial preservatives, colors, and flavors, Beech-Nut knew or should have known that the Products contained toxic heavy metals or potentially dangerous contaminants that pose health risks to humans, and particularly to infants and young children. Beech-Nut knew consumers purchased the Products based on the reasonable expectation that Beech-Nut manufactured the Products in a way that was proscribed by its marketing and advertising.

27.    Beech-Nut intended that Plaintiffs and Class members and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Beech-Nut, as well as its advertising, marketing, and labeling of the Products as natural, organic, free from artificial preservatives, and safe for infant and child consumption.

28.    Based on Beech-Nut's decision to advertise, label, and market its Products as natural, organic, and free from artificial preservatives, Beech-Nut had a duty to ensure that these statements were true and not misleading. As such, Beech-Nut knew or should have known that the Products included nondisclosed levels of toxic heavy metals.

29.    However, Beech-Nut's marketing is deceptive, misleading, unfair and false to Plaintiff and other consumers of its Products. Beech-Nut failed to disclose that the Products contain or may contain any level of heavy metals or other undesirable toxins or contaminants. Beech-Nut intentionally omitted this in order to induce and mislead reasonable consumers like Plaintiffs and members of the Classes to purchase the Products.

30.    As a result of Beech-Nut's omissions, a reasonable consumer would have no reason to suspect the presence of heavy metals in the Products without conducting his or her own tests or relying on tests conducted by a third party.

31.    Beech-Nut therefore acted negligently, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false marketing and omissions as described herein.

**C.    <u>Heavy Metals</u>**

32.    Heavy metals such as arsenic, lead, mercury, and cadmium are known as "developmental neurotoxins" that can harm a baby's developing brain and nervous system. Exposure to these neurotoxins can result in a loss of intellectual capacity and behavioral

problems like attention-deficit hyperactivity disorder ("ADHD").[6] Though heavy metals are naturally found in the environment, most heavy metals in foods come from contaminated soil or water. The contamination comes from either farming or manufacturing practices, such as the use of pesticides, mining, and smelting or pollution.

33.    The U.S. Food and Drug Administration ("FDA") has declared that inorganic arsenic, lead, cadmium, and mercury are dangerous, particularly to infants and children, and "lead to illness, impairment, and in high doses, death."[7]

34.    Healthy Babies Bright Futures—an alliance of nonprofit organizations, scientists and donors that design and implement programs to reduce babies' exposure to toxic chemicals— tested a variety of baby foods to determine the levels of heavy metals contained in their products and published the report in or around October 2019 ("Healthy Babies Bright Futures Report").[8]

35.    The Healthy Babies Bright Futures Report revealed that Beech-Nut's Rice Single Grain Baby Cereal (Stage 1) contains 117 parts per billion ("ppb") of arsenic, 86 ppb of which was inorganic arsenic, 3.5 ppb of lead, 31.7 ppb of cadmium, and 2.32 ppb of mercury.[9]

36.    In addition to the Healthy Babies Bright Futures Report, the Subcommittee published a report revealing findings that numerous baby foods, including those manufactured by Defendant Beech-Nut, are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[10]

---

[6] Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, Healthy Babies Bright Futures, at 9 (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf ("Healthy Babies Bright Futures Report").
[7] Subcommittee Report at 9.
[8] *See generally* Healthy Babies Bright Futures Report.
[9] *Id.* at 19.
[10] Subcommittee Report at 9.

37.     As noted by the Subcommittee, babies' developing brains are "exceptionally sensitive to injury caused by toxic chemicals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity."[11]

38.     Furthermore, the Subcommittee Report noted that exposing children to toxic heavy metals causes permanent decreases in IQ, an increased risk of future criminal and antisocial behavior, and "untreatable and frequently permanent" brain damage. The Subcommittee Report demonstrated the consequences that can result due to exposure to toxic heavy metals, noting that one study showed that for each IQ point lost, a child's lifetime estimated earning capacity will decrease by over $18,000.[12]

   **a.     <u>Arsenic</u>**

39.     Arsenic is a heavy metal contaminant that is found in food and drinking water from its long-time use as a pesticide and additive in animal feed. Arsenic has been known to cause bladder, lung, and skin cancer, and can also harm the developing brain and nervous system.[13] At least 13 studies link arsenic to IQ loss for children exposed to it in utero or during the first few years of life.[14]

40.     Another study on the effects of arsenic revealed an average loss of 5-6 IQ points among those who drank well water contaminated with arsenic at or above 5 ppb.[15] Studies find lasting impacts when young children are exposed to arsenic early in life, and there is no evidence that the effects of exposure are reversible.[16]

---

[11] Subcommittee Report at 9.
[12] *Id.*
[13] Healthy Babies Bright Futures Report at 13.
[14] *Id.*
[15] *Id.*
[16] *Id.* ("Studies find lasting impacts when children are exposed to arsenic early in life, including persistent IQ deficits in children two years after their polluted drinking water was replaced,

41.     The harmful effects of exposure to arsenic have caused the FDA to set standards limiting the allowable amount of inorganic arsenic in various products, such as 10 ppb for bottled water.[17] However, the Subcommittee Report shows that Beech-Nut used ingredients after they tested as high as 913.4 ppb arsenic, and routinely used high-arsenic additives that tested over 300 ppb.[18]

42.     Notably, Beech-Nut set an internal testing standard for arsenic at 3,000 ppb in additives. This standard is the highest of any responding manufacturer in the Subcommittee Report.[19]

**b.     Cadmium**

43.     Cadmium is a heavy metal that has been linked to neurotoxicity, cancer, kidney damage, bone damage, and heart damage.[20]

44.     Cadmium is a number seven on the Agency For Toxic Substances and Disease Registry's ("ATSDR") list of substances that is present in the environment that pose the most significant potential threat to human health, and is associated with decreases in IQ and the development of ADHD.[21]

45.     The FDA has set the maximum allowable level of cadmium in bottled water at 5 ppb.[22] However, according to the Subcommittee's findings, the test results of baby foods and

---

cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."
[17] 21 C.F.R. § 165.110; Subcommittee report at 4.
[18] Subcommittee report at 3.
[19] *Id.* at 4.
[20] Healthy Babies Bright Futures Report at 14.
[21] Subcommittee report at 12.
[22] *Id.* at 4.

their ingredients "eclipse those levels."[23] In fact, Beech-Nut used 105 ingredients that tested over 220 ppb of cadmium, and some tested much higher, at up to 344.55 ppb of cadmium.[24]

46.     Beech-Nut set an internal testing standard for cadmium at 3,000 ppb in additives. This standard is the highest of any responding manufacturer in the Subcommittee Report.[25]

### c. **Lead**

47.     Lead is a heavy metal that widely contaminates food from its long-time use as a pesticide, its use in food processing equipment, and its presence at elevated levels in soil.[26] Lead is a number two on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health, and is associated with behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.[27]

48.     According to the FDA, lead is especially dangerous to infants and young children.[28] Lead exposure has been shown to severely affect academic achievement in children, and the effects of early childhood exposure appear to be permanent.[29]

49.     The FDA has set the maximum allowable levels in bottle water at 5 ppb of lead.[30] However, the Subcommittee's findings reveal that Beech-Nut used ingredients containing as much as 886.9 ppb of lead, and many ingredients with a high lead content, including 483 that contained over 5 ppb of lead, 89 that contained over 15 ppb of lead, and 57 that contained over 20 ppb of lead.[31]

---

[23] *Id.*
[24] *Id.* at 3.
[25] *Id.* at 4.
[26] Healthy Babies Bright Futures Report at 13.
[27] Subcommittee Report at 11.
[28] *Id.*
[29] *Id.*
[30] *Id.* at 4.
[31] *Id.* at 3.

50.    Beech-Nut set an internal testing standard for lead at 5,000 ppb for certain ingredients like BAN 800. This standard is the highest of any responding manufacturer in the Subcommittee Report.[32]

### d.    Mercury

51.    Mercury is a pollutant released from coal-fired power plants, mining operations and other sources.[33] Mercury is number three on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health.[34]

52.    Pre-natal mercury exposure has been "consistently associated with adverse subsequent neuro-development," and post-natal mercury exposure has been associated with autistic behaviors among preschool-age children.[35]

53.    The FDA has capped the allowable level of mercury in drinking water at 2 ppb.[36] According to the Subcommittee Report, Beech-Nut does not even test for mercury in its baby foods.[37] However, the Healthy Babies Bright Futures Report revealed that Beech-Nut's Rice Single Grain Baby Cereal (Stage 1) contains 117 parts per billion ("ppb") of arsenic, 86 ppb of which was inorganic arsenic, 3.5 ppb of lead, 5.4 ppb of cadmium, and .582 ppb of mercury.[38]

### D.    Plaintiffs and Class Members' Reliance was Reasonable

54.    Plaintiffs and Class Members reasonably relied on Defendant's claims, warranties, representations, advertisements, and other marketing sources concerning the quality of the Products.

---

[32] *Id.* at 4.
[33] Healthy Babies Bright Futures Report at 14.
[34] Subcommittee Report at 12.
[35] *Id.* at 12–13.
[36] *Id.* at 4.
[37] *Id.* at 3.
[38] *Id.* at 19.

55. Plaintiffs and Class Members read and relied upon the labels and packaging of the Products when making purchasing decisions. Had Plaintiffs and Class Members known Beech-Nut's Products actually contained high levels of heavy metals, Plaintiffs and Class Members would not have purchased the Products.

56. A reasonable consumer would consider the labeling of a product when deciding whether or not to purchase it. Here, Plaintiffs and Class Members relied on the statements and omissions on the Products' labeling that led them to believe the Products were natural, organic, free from artificial preservatives, and did not contain levels of toxic heavy metals.

## CLASS ACTION ALLEGATIONS

57. Plaintiffs bring this action individually and on behalf of all other similarly situated Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks certification of the following Classes:

**Nationwide Class**

All persons within the United States who purchased Beech-Nut's Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**Florida Subclass**

All persons within the State of Florida who purchased Beech-Nut's Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**Indiana Subclass**

All persons within the State of Indiana who purchased Beech-Nut's Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**Kentucky Subclass**

All persons within the State of Kentucky who purchased Beech-Nut's Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**Minnesota Subclass**

All persons within the State of Minnesota who purchased _ Beech-Nut's Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**Nebraska Subclass**

All persons within the State of Nebraska who purchased Beech-Nut's Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**New York Subclass**

All persons within the State of New York who purchased Beech-Nut's Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**North Carolina Subclass**

All persons within the State of North Carolina who purchased Beech-Nut's Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**Oklahoma Subclass**

All persons within the State of Oklahoma who purchased Beech-Nut's Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**Utah Subclass**

All persons within the State of Utah who purchased Beech-Nut's Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

58.    Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

59.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class and/or add Subclasses before the Court determines whether certification is appropriate.

60.     **Numerosity**: The proposed Class and Subclass are so numerous that joinder of all members would be impractical. The Products are sold throughout the United States, directly and by third-party retailers. The number of individuals who purchased the Products during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

61.     **Common Questions Predominate**: There are questions of law and fact common to the proposed Class and Subclasses that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

      a.     Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

      b.     Whether Defendant's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

      c.     Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

      d.     Whether Defendant's representations concerning the Products were likely to deceive a reasonable consumer;

e.      Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

f.      Whether Defendant represents to consumers that the Products have characteristics, benefits, or qualities that they do not have;

g.      Whether Plaintiffs and the Classes are entitled to damages and/or restitution, and in what amount;

h.      Whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

i.      Whether Plaintiffs and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

62.      Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs and members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiffs and members of the Classes has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same representations regarding the health and quality of the Products, in that they are natural, organic and safe for consumption by infants and young children, and (b) the Products actually contain levels of toxic heavy metals. Therefore, individual questions, if any, pale in comparison to the numerous common questions predominating in this action.

63.    **Typicality**: The representative Plaintiffs' claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

64.    **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with, and are in no way antagonistic to, the interests of the putative Class members they seek to represent.  Plaintiffs have also retained counsel competent and experienced in class action litigation and they intend to prosecute this action vigorously. The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

65.    **Superiority**: The nature of this action and the nature of the laws available to Plaintiffs and the Classes make the use of the class action format a particularly efficient and appropriate procedure to afford relief to them and the Classes for the wrongs alleged. The damages or other financial detriment suffered by individual Class members is miniscule compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class members would not likely recover, or would not likely have the chance to recover, damages and/or restitution from Defendant, which would continue to retain the proceeds of its wrongful conduct. Additionally, injunctive relief for the benefit of Class members and the public would not be possible absent class treatment and Defendant's wrongful conduct would persist unabated. Further, individualized litigation would increase the delay and expense to all parties and would multiply the burden on the judicial system presented by the complex legal and factual issues of this case. Finally, Defendant has acted, or failed to act, on grounds generally applicable

to Plaintiffs and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes. Individualized litigation presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Express Warranty**
*(on behalf of the Classes)*

66.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-65, as though fully set forth herein.

67.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Beech-Nut for breach of express warranty.

68.     Beech-Nut marketed and sold the Products into the stream of commerce with the intent that the Products would be purchased by Plaintiffs and members of the Classes.

69.     Beech-Nut expressly warranted, advertised, and represented to Plaintiffs and members of the Classes that the Products were and are natural, organic, free from artificial preservatives, and safe for consumption by infants and young children.

70.     Beech-Nut made these express warranties regarding the Products' quality, ingredients, and suitability for consumption in writing through its website, advertisements, and marketing materials and on the Products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and members of the Classes entered into upon purchasing the Products.

71.     Beech-Nut's advertisements, warranties, and representations were made in connection with the sale of the Products to Plaintiffs and members of the Classes. Plaintiffs and

members of the Classes relied on Beech-Nut's advertisements, warranties, and representations regarding the Products in deciding whether or not to purchase Beech-Nut's Products.

72.    Beech-Nut's Products do not conform to Beech-Nut's advertisements, warranties and representations in that they are not safe or appropriate for consumption by infants and young children, and contain, or may contain, levels of various heavy toxic metals.

73.    Beech-Nut was on notice of this breach, as Beech-Nut was aware of the included heavy metals in the Products due to its own testing, and based on the investigation in the Healthy Babies Bright Futures report that revealed the Products as containing various levels of toxic heavy metals.

74.    Privity exists because Beech-Nut expressly warranted to Plaintiffs and members of the Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were natural, organic, free from artificial preservatives, and safe for consumption by infants and young children, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

75.    As a direct and proximate result of Beech-Nut's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they purchased Products that were worth less than the price they paid and they would not have purchased had they known of the risk and/or presence of heavy metals and/or other contaminants that do not conform to the products' marketing and advertisements.

76.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

<u>SECOND CAUSE OF ACTION</u>
**Breach of Implied Warranty of Merchantability**
*(on behalf of the Classes)*

77.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-65, as though fully set forth herein.

78.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Beech-Nut for breach of implied warranty of merchantability.

79.     Beech-Nut is a merchant engaging in the manufacturing and sale of goods that were purchased by Plaintiffs and members of the Classes.

80.     At all times mentioned herein, Beech-Nut manufactured or supplied the Products, and prior to the time the Products were purchased by Plaintiffs and members of the Classes, Beech-Nut impliedly warranted to them that the Products were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Products' containers and labels, including that the food was natural, organic, free from artificial preservatives, and safe for consumption by infants and young children. Plaintiffs and members of the Classes relied on Beech-Nut's promises and affirmations of fact when they purchased the Products.

81.     Contrary to these representations and warranties, the Products were not fit for their ordinary use, consumption by infants or young children, and did not conform to Beech-Nut's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

82.     Beech-Nut breached its implied warranties by selling Products that failed to conform to the promises or affirmations of fact made on the container or label, as each product

contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

83.    Beech-Nut was on notice of this breach, as Beech-Nut was aware of the included heavy metals in the Products due to its own testing, and based on the investigation in the Healthy Babies Bright Futures report that revealed the Products as containing various levels of toxic heavy metals.

84.    Privity exists because Beech-Nut impliedly warranted to Plaintiffs and members of the Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were natural, and suitable for consumption by infants and young children, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

85.    As a direct and proximate result of Beech-Nut's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known the presence or risk of heavy metals and/or unnatural or other ingredients.

86.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**THIRD CAUSE OF ACTION**
**Fraud by Omission**
*(on behalf of the Classes)*

87.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-65, as though fully set forth herein.

88.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Beech-Nut for fraud by omission.

89.    Beech-Nut concealed from and failed to disclose to Plaintiffs and members of the Classes that the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

90.    Beech-Nut was under a duty to disclose to Plaintiffs and members of the Classes the true quality, characteristics, ingredients and suitability of the Products because: (1) Beech-Nut was in a superior position to know the true state of facts about its products; (2) Beech-Nut was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by infants and young children; and (3) Beech-Nut knew that Plaintiffs and members of the Classes could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

91.    The facts concealed or not disclosed by Beech-Nut to Plaintiffs and members of the Classes are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products.

92.    Plaintiffs and members of the Classes justifiably relied on Beech-Nut's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Products, which is inferior when compared to how the Products are advertised and represented by Beech-Nut.

93.    As a direct and proximate result of Beech-Nut's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the

risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

94.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**FOURTH CAUSE OF ACTION**
**Negligent Misrepresentation**
***(on behalf of the Classes)***

95.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-65, as though fully set forth herein.

96.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Beech-Nut for negligent misrepresentation.

97.     Beech-Nut marketed the Products in a manner indicating that the Products were and are natural, organic, free from artificial preservatives, and safe for consumption by infants and young children. However, the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging. Therefore, Beech-Nut has made misrepresentations about the Products.

98.     Beech-Nut's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

99.     At all relevant times when such misrepresentations were made, Beech-Nut knew or had been negligent in not knowing that the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants. Beech-Nut has no reasonable grounds for believing its misrepresentations were not false and misleading.

100.    Beech-Nut intended that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Beech-Nut, as well as its advertising, marketing, and labeling of the Products as natural, organic, free from artificial preservatives, and safe for consumption by infants and young children.

101.    Plaintiffs and members of the Classes have reasonably and justifiably relied on Beech-Nut's negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased the Products at all.

102.    Therefore, as a direct and proximate result of Beech-Nut's negligent misrepresentations, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

103.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**FIFTH CAUSE OF ACTION**
**Intentional Misrepresentation**
***(on behalf of the Classes)***

104.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-65, as though fully set forth herein.

105.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Beech-Nut for intentional misrepresentation.

106.    Beech-Nut marketed the Products in a manner indicating that the Products were and are natural, organic, free from artificial preservatives, and safe for consumption by infants and young children. However, the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging. Therefore, Beech-Nut has made misrepresentations about the Products.

107.    Beech-Nut's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

108.    At all relevant times when such misrepresentations were made, Beech-Nut knew that the representations were misleading, or have acted recklessly in making the representations, without regard to the truth.

109.    Beech-Nut intended that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Beech-Nut, as well as its advertising, marketing, and labeling of the Products as organic, natural, and safe for consumption by infants and young children.

110.    Plaintiffs and members of the Classes have reasonably and justifiably relied on Beech-Nut's intentional misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at all.

111.    Therefore, as a direct and proximate result of Beech-Nut's intentional misrepresentations, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not

have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

112.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

<u>**SIXTH CAUSE OF ACTION**</u>
**Quasi Contract/Unjust Enrichment/Restitution**
*(on behalf of the Classes)*

113.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-65, as though fully set forth herein.

114.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Beech-Nut for quasi contract, unjust enrichment, and restitution.

115.    As alleged herein, Beech-Nut has intentionally and recklessly made misleading representations to Plaintiffs and members of the Classes to induce them to purchase the Products. Plaintiffs and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Beech-Nut. Plaintiffs and members of the Classes therefore have been induced by Beech-Nut's misleading and deceptive representations about the Products, and paid more money to Beech-Nut for the Products than they otherwise would and/or should have paid.

116.    Plaintiffs and members of the Classes have conferred a benefit upon Defendant as Beech-Nut has retained monies paid to them by Plaintiffs and members of the Classes.

117.    The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the Classes – i.e., Plaintiffs and members of the Classes did not receive the full value of the benefit conferred upon Beech-Nut.

118.    Therefore, it is inequitable and unjust for Beech-Nut to retain the profit, benefit, or compensation referred upon it without paying Plaintiffs and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

119.    As a direct and proximate result of Beech-Nut's unjust enrichment, Plaintiffs and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Beech-Nut from its deceptive, misleading, and unlawful conduct as alleged herein.

**SEVENTH CAUSE OF ACTION**
**Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201** *et seq.*
**(*On behalf of Plaintiff Jessica David and the Florida Subclass*)**

120.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-65 as if fully set forth herein.

121.    Plaintiff David brings this claim individually and on behalf of the members of the proposed Florida Subclass against Beech-Nut for violations of Florida Deceptive and Unfair Trade Practices Act, O Fla. Stat. §§ 501.201 *et seq.*

122.    Plaintiff David and members of the Florida Subclass are "consumers," as defined by Fla. Stat. § 501.203(7), the products sold by Defendant Beech-Nut are "goods" within the meaning of FDUTPA, and the transactions at issue constitute "trade or commerce" as defined by FDUTPA.

123.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204 provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

124.    For the reasons discussed herein, Beech-Nut violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Fla. Stat. § 501.201, *et seq*. Beech-Nut's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including Plaintiff David and members of the Florida Subclass and other consumers acting reasonably under the circumstances, to their detriment.

125.    At all times mentioned herein, Beech-Nut engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that they advertised, offered or sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

126.    Beech-Nut repeatedly advertised on the labels for its Products, on its websites, and through national advertising campaigns, among other things, that its Products were organic, natural, and safe for consumption by infants and young children. Beech-Nut failed to disclose the material information that its Products contained unsafe levels of toxic heavy metals.

127.    Beech-Nut's representations and omissions were material because they were likely to deceive reasonable consumers and to induce them to purchase Beech-Nut's Products without knowing that the Products contained unsafe levels of toxic heavy metals. As a direct and proximate result of Beech-Nut's unfair and deceptive acts or practices, Plaintiff David and members of the Florida Subclass suffered damages by purchasing Beech-Nut's Products because they would not have purchased Beech-Nut's Products had they known the truth, that the Products contain, or may contain, levels of toxic heavy metals.

128.    Beech-Nut's deceptive trade practices caused Plaintiff David and members of the Florida Subclass to suffer injury in fact and actual damages in the form of the loss or

diminishment of value of the Products they purchased, which allowed Beech-Nut to profit at the expense of Plaintiff David and members of the Florida Subclass. The injuries Plaintiff David and members of the Florida Subclass suffered were to legally protected interests. The gravity of the harm of Defendant Beech-Nut's actions is significant and there is no corresponding benefit to consumers of such conduct.

129.    Plaintiff David and members of Florida Subclass seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, as provided by FDUTPA and applicable law.

**EIGHTH CAUSE OF ACTION**
**Minnesota Prevention of Consumer Fraud Act**
**M.S.A. § 325F.68 *et seq.***
(***On behalf of Plaintiff Tiffanie Skibicki and the Minnesota Subclass***)

130.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-65 as if fully set forth herein.

131.    Plaintiff Skibicki brings this claim individually and on behalf of the members of the proposed Minnesota Subclass against Beech-Nut for violations of Minnesota Prevention of Consumer Fraud Act, M.S.A. § 325F.68 *et seq.*

132.    The Minnesota Prevention of Consumer Fraud Act prohibits the "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." M.S.A. § 325F.69.

133.    The Products at issue are "Merchandise" under M.S.A. § 325F.68, subd. 2.

134.    Beech-Nut and Plaintiff and members of the Minnesota Subclass are "persons" within the meaning of the Minnesota Prevention of Consumer Fraud Act, M.S.A. § 325F.68, subd. 3.

135.    For the reasons discussed herein, Beech-Nut violated and continues to violate the Minnesota Prevention of Consumer Fraud Act by engaging in the deceptive, unfair acts or practices proscribed by M.S.A. § 325F.68, *et seq.* As detailed above, in the course of their business, Beech-Nut made materially false and misleading statements to Plaintiff and members of the Minnesota Subclass and supplied Plaintiff and members of the Minnesota Subclass with false information concerning the health and safety of its Products.

136.    Beech-Nut also concealed from Plaintiff and members of the Minnesota Subclass the presence, or risk of, toxic heavy metals in its Products.

137.    Beech-Nut intended that Plaintiff and members of the Minnesota Subclass rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Beech-Nut, as well as its advertising, marketing, and labeling of the Products as natural, organic, free from artificial preservatives, and safe for consumption by infants and young children.

138.    By failing to warn Plaintiff and members of the Minnesota Subclass that the Products contain, or may contain, toxic heavy metals such as arsenic, cadmium, mercury, and lead, Beech-Nut violated the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* Had Beech-Nut disclosed all material information regarding the presence, or risk of, toxic heavy metals in its Products, Plaintiff and members of the Minnesota Subclass would not have purchased the Products.

139.    As a direct and proximate result of Beech-Nut's violation of the Minnesota Prevention of Consumer Fraud Act, M.S.A. § 325F.68, *et seq.*, Plaintiff and members of the Minnesota Subclass have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

140.    Plaintiff Skibicki and members of Minnesota Subclass seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, as provided by Minnesota Prevention of Consumer Fraud Act and applicable law.

**NINTH CAUSE OF ACTION**
**Minnesota False Statement in Advertising Act**
**M.S.A. § 325F.67**
**(*On behalf of Plaintiff Tiffanie Skibicki and the Minnesota Subclass*)**

141.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-65 as if fully set forth herein.

142.    Plaintiff Skibicki brings this claim individually and on behalf of the members of the proposed Minnesota Subclass against Beech-Nut for violations of Minnesota False Statement in Advertising Act, M.S.A. § 325F.67.

143.    Beech-Nut's actions, representations and omissions constitute unfair and deceptive trade practices within the meaning of the Minnesota False Statement in Advertising Act, M.S.A. § 325F.67, including, but not limited to:

    a.    Advertising goods and/or services with the intent not to sell them as advertised

    b.    Advertising or otherwise representing that goods or services are guaranteed in such a way as to have the capacity and tendency of misleading purchasers or prospective purchasers or prospective purchasers into believing that the goods or services so

guaranteed have a greater degree of serviceability, durability, or performance capability in actual use than is true in fact; and

c.    Failing to disclose material information concerning goods or services which information was known at the time of an advertisement or sale, and such failure to disclose such information was intended to induce Plaintiff and members of the Class to enter into a transaction.

144.    By engaging in conduct described herein, Beech-Nut violated and continues to violate the false advertising provisions of Minnesota's False Statement in Advertising Act, M.S.A. § 325F.67.

145.    Beech-Nut's untrue, deceptive, and misleading assertions, representations, and advertisements concerning its Products include its statements that its Products are natural, organic, free from artificial preservatives, and safe for consumption by infants and young children. Beech-Nut markets its Products in a manner that indicates its Products are safe for consumption by infants and young children, as it uses words such as "ages "4+ Months", "6+ Months", "8+ Months" and "12+ Months" to emphasize the foods suitability for consumption by infants and young children.

146.    The unfair and deceptive trade practices and false advertising described herein occurred in the course of Beech-Nut's business and significantly impacted the public as actual and potential consumers of Beech-Nut's businesses.

147.    As a direct and proximate result of Beech-Nut's violation of the Minnesota False Statement in Advertising Act, M.S.A. § 325F.67., Plaintiff and members of the Minnesota Subclass have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

148.    Plaintiff Skibicki and members of Minnesota Subclass seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, as provided by Minnesota False Statement in Advertising Act and applicable law.

**TENTH CAUSE OF ACTION**
**North Carolina Unfair Trade Practices Act**
**N.C. Gen. Stat. § 75-1.1 *et seq.***
**(*On behalf of Plaintiff Susan Canada and the North Carolina Subclass*)**

149.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-65 as if fully set forth herein.

150.    Plaintiff Canada brings this claim individually and on behalf of the members of the proposed North Carolina Subclass against Beech-Nut for violations of North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75.1-1, *et seq.*

151.    North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

152.    Beech-Nut's acts and practices described above were performed in the course of Beech-Nut's trade or business and thus occurred in or affected "commerce" as defined in N.C. Gen. Stat. § 75-1.1(b).

153.    In the course of its business, Beech-Nut concealed that its Products contained, or were at risk of containing, toxic heavy metals such as arsenic, cadmium, mercury, and lead, and otherwise engaged in activities with a tendency or capacity to deceive. Beech-Nut also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud,

misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of its Products.

154.    By misrepresenting that its Products were safe for consumption by infants and young children, and advertising its Products as natural, organic, free from artificial preservatives, and safe for consumption by infants and young children, Beech-Nut participated in unfair, deceptive, and unconscionable acts that violated the NCUDTPA.

155.    In light of Beech-Nut's marketing, including its commitment to providing natural and organic products that are free from artificial preservatives, colors, and flavors, Beech-Nut knew or should have known that the Products contained toxic heavy metals or potentially dangerous contaminants that pose health risk to humans, and particularly to infants and young children. Furthermore, Beech-Nut tests its products for toxic heavy metals, as evidenced by its representations on its website[39], and therefore was aware, or should have been aware, of the presence of toxic heavy metals in its Products. However, Beech-Nut concealed the fact that its Products contain, or may contain, levels of toxic heavy metals.

156.    By failing to disclose and by actively concealing the presence of, or risk of, toxic heavy metals in its Products, and by marketing its Products as natural, organic, and safe for consumption by infants and young children, Beech-Nut engaged in unfair, unconscionable, and deceptive business practices in violation of the NCUDTPA.

157.    Beech-Nut intentionally and knowingly misrepresented material facts regarding the Products with an intent to mislead Plaintiff and members of the proposed North Carolina Subclass.

---

[39] *Beech-Nut, Our Story*, https://www.beechnut.com/our-story/

158.    As a direct and proximate result of Beech-Nut's violations of the NCUDTPA, Plaintiff and members of the proposed North Carolina Subclass have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

159.    Plaintiff Canada and members of the North Carolina Subclass seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, as provided by NCUDTPA and applicable law.

## ELEVENTH CAUSE OF ACTION
### New York Deceptive Acts and Practices Act
### N.Y. Gen. Bus. Law § 349
### (*On behalf of Plaintiff Cassandra Martell and the New York Subclass*)

160.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-65 as if fully set forth herein.

161.    Plaintiff Martell brings this claim individually and on behalf of the members of the proposed New York Subclass against Beech-Nut for violations of New York Deceptive Acts and Practices Act ("NYDAPA"), N.Y. Gen. Bus. Law § 349.

162.    Plaintiff Martell and members of the New York Subclass and Defendant Beech-Nut are "persons" under NYDAPA, N.Y. Gen. Bus. Law § 349(h).

163.    Beech-Nut's actions as set forth herein occurred in the conduct of trade or commerce under NYDAPA.

164.    NYDAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Beech-Nut's conduct, as set forth herein, constitutes deceptive acts or practices under this section.

165.    In the course of business, Beech-Nut made affirmative misrepresentations that conveyed to Plaintiff Martell and members of the New York Subclass that the Beech-Nut baby food Products were natural, organic, and safe for consumption by infants and young children. Beech-Nut, however, concealed and suppressed material facts concerning the Products, including that they contained unsafe levels of heavy metals.

166.    Plaintiff Martell and members of the New York Subclass had no way of discerning that Beech-Nut's representations were false and misleading without conducting their own scientific tests.

167.    Beech-Nut thus violated NYDAPA by making statements, when considered as a whole from the perspective of a reasonable consumer, that conveyed that its Products were natural, organic, and safe for consumption by infants and young children. Beech-Nut also failed to disclose and warn that its Products were unsafe and unsuitable for consumption by infants and young children, and that the Products contained levels of heavy metals.

168.    Beech-Nut intentionally and knowingly made affirmative misrepresentations and failed to disclose material facts regarding its Products with intent to mislead Plaintiff Martell and members of the New York Subclass.

169.    Beech-Nut knew or should have known that their conduct violated NYDAPA, and owed a duty to Plaintiff Martell and members of the New York Subclass to disclose the true and unsafe nature of its Products.

170.    Beech-Nut's concealment of the level of heavy metals in its Products was material to Plaintiff Martell and members of the New York Subclass, as they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach

importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

171.    Beech-Nut's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Martell and members of the New York Subclass, about the safety of its Products. Plaintiff Martell and members of the New York Subclass would not have purchased the Products had they known that the Products were unsafe for consumption by infants and young children, and that they contained levels of toxic heavy metals.

172.    Beech-Nut's violations present a continuing risk to Plaintiff Martell and members of the New York Subclass as well as to the general public. Beech-Nut's unlawful acts and practices complained of herein affect the public interest.

173.    As a direct and proximate result of Beech-Nut's misrepresentations, concealment of, and failure to disclose material information, as well as Beech-Nut's deceptive and unfair acts and practices made during the course of Beech-Nut's business, Plaintiff Martell and members of the New York Subclass suffered ascertainable loss and actual damages.

174.    Plaintiff Martell and members of the New York Subclass seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, as provided by NYDAPA and applicable law.

**TWELFTH CAUSE OF ACTION**
**New York False Advertising Act**
**N.Y. Gen. Bus. Law § 350**
(***On behalf of Plaintiff Martell and the New York Subclass***)

175.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-65 as if fully set forth herein.

176.    Plaintiff Martell brings this claim individually and on behalf of the members of the proposed New York Subclass against Beech-Nut for violations of New York False Advertising Act ("NYFAA"), N.Y. Gen. Bus. Law § 350.

177.    The NYFAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity . . ." N.Y. Gen. Bus. Law § 350(a).

178.    Beech-Nut caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements and omissions that were untrue or misleading, and that were known or should've been known through the exercise of reasonable care by Beech-Nut, to be untrue and misleading.

179.    Beech-Nut made numerous material and affirmative misrepresentations and omissions of fact with intent to mislead and deceive consumers concerning its Products. Specifically, Beech-Nut intentionally concealed and suppressed material facts concerning the safety of its Products, and that they contained, or were at risk of containing, levels of toxic heavy metals. Beech-Nut intentionally and grossly defrauded and mislead Plaintiff Martell and members of the New York Subclass concerning the true and unsafe nature of its Products.

180.    The misrepresentations and omissions regarding the Products set forth herein were material and likely to deceive a reasonable consumer, as they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

181.    Beech-Nut intentionally and knowingly misrepresented material facts regarding its Products with intent to mislead Plaintiff Martell and members of the New York Subclass.

182.    Beech-Nut's false advertising was likely to and did in fact deceive reasonably consumers, including Plaintiff Martell and members of the New York Subclass, about the true nature of the safety and quality of its Products. Plaintiff Martell and members of the New York Subclass would not have purchased the Products had they known the Products had they known that the Products were unsafe for consumption by infants and young children, and that they contained levels of toxic heavy metals.

183.    Beech-Nut's violations present a continuing risk to Plaintiff Martell and members of the New York Subclass as well as to the general public. Beech-Nut's unlawful acts and practices complained of herein affect the public interest.

184.    As a direct and proximate result of Beech-Nut's misrepresentations, concealment of, and failure to disclose material information, as well as Beech-Nut's deceptive and unfair acts and practices made during the course of Beech-Nut's business, Plaintiff Martell and members of the New York Subclass suffered ascertainable loss and actual damages.

185.    Plaintiff Martell and members of the New York Subclass seek relief for the injuries they have suffered as a result of Beech-Nut's unfair and deceptive acts and practices, as provided by NYFAA and applicable law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, respectfully prays for following relief:

A.      Certification of this case as a class action on behalf of the Class and Subclasses defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class counsel;

B.      A declaration that Defendant's actions, as described herein, constitute violations of the claims described herein;

C.      An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

D.      An award of injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

E.      An order directing Defendant to engage in a corrective advertising campaign;

F.      An award to Plaintiffs and their counsel of their reasonable expenses and attorneys' fees;

H.      An award to Plaintiffs and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

I.      For such further relief that the Court may deem just and proper.


/ / /

/ / /

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims presented herein so triable.

Dated: March 24, 2021                          **CARLSON LYNCH LLP**

By:  */s/ Gary F. Lynch*
_____
Gary F. Lynch
1133 Penn Avenue, Floor 5
Pittsburgh, PA 15222
Tel.    412-322-9243
Fax:    412-231-0246
glynch@carlsonlynch.com

**CARLSON LYNCH LLP**
Todd D. Carpenter
Scott G. Braden
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.:    619-762-1900
Fax:    619-756-6991
tcarpenter@carlsonlynch.com
sbraden@carlsonlynch.com

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown
Michael A. Tompkins
Brett R. Cohen
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel:    516-873-9550
jbrownl@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

*Attorneys for Plaintiffs*